UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD GIBSON,<br>Plaintiff,<br>v.<br>CASTELLANOS, *et al.*,<br>Defendants. | Case No. 1:21-cv-00794-KES-FJS (PC)<br>FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANT CASTELLANOS' MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON PLAINTIFF'S FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES<br>(ECF No. 54)<br><u>FOURTEEN (14) DAY DEADLINE</u> |

## I. <u>INTRODUCTION</u>

Plaintiff Reginald Gibson ("Plaintiff") is a former state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's second amended complaint against: (1) Defendant Castellanos for excessive force in violation of the Eighth Amendment for both the December 1, 2019, and April 4, 2020, incidents; (2) Defendant Riley for excessive force in violation of the Eighth Amendment for the December 1, 2019, incident; (3) Defendant Castellanos for retaliation in violation of the First Amendment for the April 4, 2020, incident; and (4) Defendant Riley for retaliation in violation of the First Amendment for the December 1, 2019, incident. (ECF No. 19.)

Currently before the court is Defendant Castellanos' motion for partial summary judgment on Plaintiff's First Amendment retaliation claim against Defendant Castellanos on the ground that

there is no genuine dispute of material fact that Plaintiff failed to exhaust his administrative remedies as to this claim as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (ECF No. 54.)[1] Plaintiff filed an opposition to the motion for summary judgment on August 6, 2025. (ECF No. 67.) Defendant Castellanos filed a reply on August 20, 2025. (ECF No. 69.) Defendant Castellanos' motion for partial summary judgment is fully briefed. Local Rule 230(l). For the reasons set forth below, the court recommends that Defendant's motion for partial summary judgment be granted.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will

[1] Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. (ECF No. 54-5.); *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988).

have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

B. Exhaustion of Administrative Remedies

Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal

law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Albino*, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Albino*, 747 F.3d at 1166. Otherwise, defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows a failure to exhaust. *Id.*

Defendants must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). The burden then shifts to Plaintiff to show something in his particular case made the existing and generally available administrative remedies effectively unavailable to him. *Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). The ultimate burden of proof on the issue of exhaustion remains with Defendants. *Id.* (quotation marks omitted).

## III. DISCUSSION

### A. Summary of CDCR's Administrative Review Process

At the relevant time, "[t]he California prison grievance system ha[d] three levels of review; an inmate exhausts administrative remedies by obtaining a decision at each level." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs. tit. 15, § 3084.1(b) (repealed June 1, 2020) and *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010)). *See also* Cal. Code Regs. tit. 15, § 3084.7(d)(3) ("The third level review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal, and shall be conducted by

a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies….") (repealed June 1, 2020).

Pursuant to this system, an inmate may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his . . . health, safety, or welfare." *Id.* at § 3084.1(a).

The process was initiated by submitting a CDCR Form 602, Inmate/Parolee Appeal. *Id.* at § 3084.2(a). In the appeal form, prisoners must list all staff members involved and describe their involvement in the issue. *Id.* at § 3084.2(a)(3). If the inmate does not have the requested identifying information about the staff member, they must provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member in question. *Id.*

B. <u>Undisputed Material Facts ("UMF")</u>[2]

<u>Plaintiff's Allegations Against Defendant Castellanos</u>

1. Plaintiff filed his second amended complaint ("SAC") on November 23, 2022. (ECF No. 16.)
2. At all times mentioned in the SAC, Plaintiff was a California prison inmate housed at Kern Valley State Prison ("KVSP"). (*Id.*)
3. The SAC proceeds on the following claims against Defendant Castellanos: (1) Eighth Amendment excessive force claim for assaulting Plaintiff in his cell on December 1, 2019; (2) Eighth Amendment excessive force claim for assaulting Plaintiff while being escorted to morning yard on April 4, 2020; and (3) First Amendment retaliation claim for assaulting Plaintiff on April 4, 2020, in retaliation for Plaintiff reporting Defendant

---

[2] *See* Defendant Castellanos's Statement of Undisputed Facts in Support of Motion for Partial Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies. (ECF No. 54-1.) Plaintiff did not provide a separate statement of undisputed facts in his opposition. Local Rule 260(a). As a result, Defendant Castellanos' Statement of Undisputed Facts is accepted except where brought into dispute by Plaintiff's verified second amended complaint. (ECF No. 16); *see Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence). Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

Castellanos for the assault that occurred on December 1, 2019. (*Id.* at 3–8; ECF No. 17 at 12 (Screening Order).)

CDCR's Inmate and Administrative Grievance Process

4. Since August 1, 2008, the California Department of Corrections and Rehabilitation ("CDCR") Office of Appeals ("OOA") receives, reviews, and maintains all final-level appeals for non-health care issues. (ECF No. 54-2 (Moseley Decl.) ¶ 2.)
5. When an inmate appeal is received by the OOA, it is assigned a tracking log number and entered into a computer system. (*Id.* ¶ 3.)
6. An "Appeal History Report" is available in the computer system for each offender. (*Id.*)
7. The Appeal History Report includes the following information: the offender's first and last name, the offender's CDCR number, the appeal log number, the appeal issue, the date the appeal was received, the underlying grievance log number (which includes the acronym of the institution or parole region where the underlying grievance arose), the date the appeal is closed, and the final disposition of the appeal. (*Id.*)
8. All offender appeals are reviewed and screened in or screened out by the OOA. (*Id.* ¶ 4.)
9. An appeal is screened out (and not answered substantively) if it does not comply with the regulations governing the appeal process. (*Id.*)
10. If an appeal is screened out, the offender is informed of the reason for the screen out and how the deficiency can be cured, if the regulations provide for a cure. (*Id.*)
11. An appeal is screened in (and answered substantively) if it complies with the governing regulations. (*Id.*)
12. The Appeal History Report includes appeals that were screened out or in; and, if screened out, the report includes the reason for the screen-out. (*Id.*)
13. The OOA's decisions represent the final level of review in CDCR's grievance and appeal process and are rendered on behalf of the Secretary of CDCR. (*Id.* ¶ 5.)
14. If filing a grievance before June 1, 2020, an offender was required to follow the procedures set forth in California Code of Regulations, title 15, sections 3084–85. (*Id.* ¶ 6.)

15. Between June 1, 2020, and December 31, 2021, an offender was required to follow the procedures set forth in Title 15, sections 3480–87. (*Id.*)

16. Beginning January 1, 2022, offenders are required to follow the procedures set forth in Title 15, sections 3480–85. (*Id.*)

17. Before June 2020, the administrative grievance process consisted of three levels of review, which the inmate initiated by submitting an "appeal"—the CDCR Form 602 – Inmate/Parolee Appeal— which is now referred to as a "grievance." (ECF No. 54-3 (Leyva Decl.) ¶ 2.)

18. First- and second-level appeals were handled by staff located at the institution where the incident giving rise to the inmate complaint occurred, while third-level non-medical appeals were received and decided at the OOA located in Sacramento, California. (*Id.*)

19. For appeals submitted before June 2020, a substantive decision at the third level exhausted CDCR's administrative remedies. (*Id.*)

20. Beginning in June 2020, the administrative grievance process changed to two levels of review—a review at the institutional level with the Grievance Office and a review at the OOA in Sacramento. (*Id.* ¶ 3.)

21. The OOA's records of appeals are maintained in the course of regularly conducted activities of the OOA, and making and maintaining records is a regular practice of those activities. (Moseley Decl. ¶ 7.)

<u>Plaintiff's Administrative Grievances and Appeals</u>

22. A search was conducted at the institutional level Office of Grievances ("OOG") for any grievances Plaintiff submitted containing allegations that Defendant Castellanos used excessive force on him on December 1, 2019, including, but not limited to, by assaulting Plaintiff in his cell. (Leyva Decl. ¶ 9(a)–(c).)

23. A search was conducted at the institutional level OOG for any grievances Plaintiff submitted containing allegations that Defendant Castellanos used excessive force on him on April 4, 2020, including, but not limited to, by assaulting Plaintiff while escorting him. (*Id.*)

24. A search was conducted at the institutional level OOG for any grievances Plaintiff submitted containing the allegations that Defendant Castellanos retaliated against him on April 4, 2020, including, but not limited to, by assaulting Plaintiff while escorting him. (*Id.*)

25. In Grievance Log No. KVSP-O-19-04581, submitted on December 2, 2019, Plaintiff complained that on December 1, 2019, Defendant Castellanos came into his cell with Defendant Riley and assaulted him by cutting his leg with a box cutter and hitting him in the face and legs. The grievance was bypassed at the first level review and partially granted at the second level review in that an appeal inquiry was completed. The second level review determined that staff did not violate CDCR policy with respect to one or more of the issues appealed. (*Id.* ¶ 10(a), Ex. 2.)

26. In Grievance Log No. KVSP-O-20-01237, submitted on April 5, 2020, Plaintiff complained that on April 4, 2020, during an escort, Defendant Castellanos asked him what he had in his hand, and Plaintiff told him that he had a reading book. Defendant Castellanos then attacked him by rushing him into the wall, socked him, and then slammed him into the floor. Plaintiff stated that Defendant attacked him without provocation of any of Plaintiff's actions. Plaintiff stated in the grievance that he submitted a 602 about Defendant Castellanos previously attacking him on December 1, 2019, but does not make any allegation that Defendant Castellanos took retaliatory acts. Plaintiff stated that he requested Defendant be refrained from escorting him but that the incident happened while under escort. Plaintiff requested the drug testing of Defendant due to his bizarre, "unnormal" behavior. Plaintiff also stated that Defendant averages an attack on an inmate once a week. The grievance was bypassed at the first level review and partially granted at the second level review in that an appeal inquiry was completed. The second level review determined that staff did not violate policy with respect to one or more of the issues appealed. The second level review informed Plaintiff that the grievance was considered to address an attack without provocation. The response warned Plaintiff that any other issue of staff misconduct must be appealed separately and that he will not

exhaust administrative remedies for any unrelated issues not covered in the response. (*Id.* ¶ 10(b), Ex. 3.)

27. In Grievance Log No. 000000166049, submitted on September 19, 2021, Plaintiff complained that unidentified staff were telling other inmates that he is a snitch. Plaintiff described other inmates attacking him at various times in 2020 and 2021. Plaintiff also stated that he is "dealing with a battery on a peace officer" on April 4, 2020, and that this is the same officer who attacked him on December 1, 2019. Plaintiff does not make any allegation that Defendant Castellanos took retaliatory acts. The grievance was disapproved at the first level review on November 6, 2021. Plaintiff was interviewed for the first level of review and asked if he could identify which staff were telling inmates that he was a snitch. Plaintiff stated that it was Officer T. Rodgers. (*Id.* ¶ 10(c), Ex. 4.)

28. Other than the three grievances listed above (Log Nos. KVSP-O-19-04581, KVSP-O-20-01237, and Log No. 000000166049), OOG located no other grievances received from Plaintiff regarding or relating to the allegations described in paragraph 9(a)–(c). (*Id.* ¶ 11.)

29. A search of the OOA's records was conducted to determine whether any appeals submitted by Plaintiff alleged that Defendant Castellanos violated Plaintiff's Eighth Amendment rights by using excessive force on Plaintiff on December 1, 2019, including, but not limited to, assaulting Plaintiff in his cell. (Moseley Decl. ¶ 8(a)–(c).)

30. A search of the OOA's records was conducted to determine whether any appeals submitted by Plaintiff alleged that Defendant Castellanos violated Plaintiff's Eighth Amendment rights by using excessive force on him on April 4, 2020, including, but not limited to, assaulting Plaintiff while escorting him. (*Id.*)

31. A search of the OOA's records was conducted to determine whether any appeals Plaintiff submitted alleged that Defendant Castellanos retaliated against Plaintiff in violation of the First Amendment on April 4, 2020, including, but not limited to, assaulting Plaintiff while escorting him. (*Id.*)

32. In Appeal Log No. 2001871 (an appeal of Grievance Log No. KVSP-O-19-04581), Plaintiff alleged that Defendant Castellanos came into Plaintiff's cell with Defendant

Riley on December 1, 2019, and assaulted Plaintiff by roughing up Plaintiff's leg with a box cutter and hitting Plaintiff in the face and legs. Plaintiff made no reference in this appeal to retaliatory acts by Defendant Castellanos. The OAA received Appeal Log No. 2001871 from Plaintiff on February 19, 2020, and denied on May 29, 2020. (*Id.* ¶ 9 & Ex. 3.)

33. In Appeal Log No. 2010382 (an appeal of Grievance Log No. KVSP-O-20-01237), Plaintiff alleged that Defendant Castellanos escorted Plaintiff on April 4, 2020, and asked Plaintiff what was in Plaintiff's hand. After Plaintiff told Defendant Castellanos that Plaintiff had a reading book, Defendant Castellanos attacked Plaintiff by rushing Plaintiff into the plumbing installment door, socked Plaintiff, and then slammed Plaintiff into the ground face first. Plaintiff stated that Defendant Castellanos attacked without any provocation. Plaintiff also stated that Defendant Castellanos previously attacked Plaintiff on December 1, 2019, that Plaintiff submitted a Form 602 grievance about the incident, and that Defendant Castellanos attacks one inmate per week on average. Plaintiff made no reference in this appeal to retaliatory acts by Defendant Castellanos. Appeal Log No. 2010382 was received by the OOA from Plaintiff on June 8, 2020, and was denied on October 19, 2021. (*Id.* ¶ 10 & Ex. 4.)

34. In Appeal Log No. 166049, Plaintiff alleged that officers at the prison were covering for each other and putting Plaintiff's life in danger. Plaintiff also alleged that on December 9, 2019, and April 4, 2020, Defendant Castellanos attacked Plaintiff, resulting in Plaintiff being sent to an outside hospital. In addition, Plaintiff alleged that on January 18, 2018, Correctional Officer Silva attacked Plaintiff on the yard and called Plaintiff a snitch. Plaintiff made no allegation that Defendant Castellanos took retaliatory acts in this appeal. The OAA received Appeal Log No. 166049 from Plaintiff on November 22, 2021. In a letter dated January 22, 2022, the OOA acknowledged that the regulatory period of time to respond to Plaintiff's appeal expired before the OOA was able to respond. (*Id.* ¶ 9 & Ex. 5.)

35. Other than the two appeals described in paragraphs 9 and 10, a review of the OOA computer system and Exhibits 1 and 2 indicates that no other appeals were received by the OOA during the time period described in paragraph 8 containing the allegations described in that same paragraph. (*Id.* ¶ 12.)

36. Defendant served requests for admission on Plaintiff that requested that Plaintiff admit that Log No. KVSP-O-19-04581 and Log No. KVSP-O-20-01237 were the only grievances that he submitted and that he contends these two submissions exhausted his grievances. Plaintiff's supplemental responses admitted that he submitted these log numbers and that they exhausted his remedies. Plaintiff did not deny or object to the requests on the basis of submitting any other grievances. (ECF No. 54-4 (Medina Decl.) ¶¶ 2, 6; Exs. 1, 3.)

37. Defendant served a request for production of documents on Plaintiff that requested any and all documents related to any CDCR-602s regarding the allegations in the SAC. Plaintiff produced only one document relating to Log No. KVSP-O-20-01237. Plaintiff did not identify or produce a document from any other grievance he contends he submitted that is not covered by this motion. (*Id.* ¶¶ 3, 6; Exs. 2, 3.)

B. <u>Parties' Positions</u>

Defendant Castellanos contends that Plaintiff failed to assert his retaliation claim in any inmate grievance prior to the commencement of this action. As a result, Plaintiff's First Amendment retaliation claim against Defendant Castellanos should be dismissed, and this case should proceed only on Plaintiff's Eighth Amendment excessive force claims against Defendants Castellanos and Riley.

In opposition, Plaintiff argues that he exhausted his administrative remedies related to the incidents of December 1, 2019, and April 4, 2020. Plaintiff reasserts his allegations against Defendant Castellanos regarding the excessive force incidents on December 1, 2019, and April 4, 2020. Plaintiff attaches copies of documents related to the filing of grievances about these incidents and Plaintiff's subsequent medical treatment.

In reply, Defendant Castellanos argues that Plaintiff's opposition does not dispute any of the facts identified by Defendant Castellanos, does not address Defendant Castellanos' arguments, and does not provide any excuse for his failure to exhaust his available administrative remedies as to the First Amendment claim.

C. Analysis

Plaintiff argues, and Defendant Castellanos concedes, that Plaintiff exhausted his administrative remedies as to his Eighth Amendment excessive force claims against Defendants Castellanos and Riley. (ECF No. 54 at 3.) The parties are also in agreement that Grievance Log Nos. KVSP-O-19-04851 and KVSP-O-20-01237 are the only grievances Plaintiff submitted that are relevant to the allegations in this action. UMF Nos. 28–31, 35–36. Defendant Castellanos argues only that Plaintiff provided no notice to the prison regarding any claim that Defendant Castellanos retaliated against Plaintiff on April 4, 2020, because he engaged in a constitutionally protected activity.

Based on the undisputed facts, the court finds that Plaintiff failed to exhaust administrative remedies as to his First Amendment retaliation claim against Defendant Castellanos. The court recommends that Defendant Castellanos' motion for partial summary judgment be granted and Plaintiff's First Amendment retaliation claim be dismissed, without prejudice.

1. *Grievance Log No. KVSP-O-19-04851*

In Grievance Log No. KVSP-O-19-04851, dated December 2, 2019, Plaintiff describes the subject of the appeal as excessive force and failure to protect. (ECF No. 54-2 at 18.) In the grievance, Plaintiff states that on December 1, 2019, Defendants Castellanos and Riley came inside his cell and assaulted him by hitting him in the face and cutting his left leg with a box razor. UMF 25. The grievance was bypassed at the first level review and partially granted at the second level review on January 21, 2020. (ECF No. 54-2 at 22.) The OOA received Appeal Log No. 2001871, an appeal of KVSP-O-19-04581, from Plaintiff on February 19, 2020. UMF 32. Appeal Log No. 2001871 was denied at the third and final level of review on May 29, 2020. UMF 32. As Plaintiff's final submission for KVSP-O-19-04851 was received on February 19, 2020,

KVSP-O-19-04851 could not have exhausted Plaintiff's administrative remedies for a retaliation claim against Defendant Castellanos related to events that occurred on April 4, 2020.

Accordingly, KVSP-O-19-04851 did not exhaust Plaintiff's administrative remedies with respect to his First Amendment retaliation claim against Defendant Castellanos.

2. *Grievance Log No. KVSP-O-20-01237*

In Grievance Log No. KVSP-O-20-01237, dated April 5, 2020, Plaintiff describes the subject of the appeal as staff misconduct and false report. (ECF No. 54-2 at 36.) In the grievance, Plaintiff states that on April 4, 2020, as he exited his cell for an escort, Defendant Castellanos asked Plaintiff what Plaintiff had in his hand. UMF 26. Plaintiff responded that he had a reading book. *Id.* Defendant Castellanos grabbed Plaintiff by his neck and shirt, rushing Plaintiff into the plumbing installment door so hard that Plaintiff's head hit the wall. *Id.*; (ECF No. 54-2 at 38). Defendant Castellanos snatched Plaintiff off the plumbing door and "socked [Plaintiff] in the front midsection of [his] upper tooth," then slammed Plaintiff on the ground face-first. UMF 26; (ECF No. 54-2 at 38). Plaintiff states that Defendant Castellanos attacked him with no provocation. UMF 26; (ECF No. 54-2 at 38). Plaintiff further states: "this is the second time Officer Castellanos has brutely attacking me, on 12-1-19, Officer Castellanos attacked me in my cell, I also have A citizens complaint (602) pending at the third level for that battery, Officer E. Castellanos was Questioned multiple times about this Incident dated of 12-1-19, I requested that Officer E. Castellanos be reframed[3] from exscorting me." (ECF No. 54-2 at 38 (unedited text).) Plaintiff requested that the attack be investigated and reports sent to the Office of Internal Affairs for a complete investigation. (*Id.* at 36.)

Plaintiff requested the following action on this grievance: money damages; that Defendant Castellanos take lie detector and drug tests; the allegedly false Rules Violation Report against Plaintiff for a battery from April 4, 2020, be dropped; investigation of the matter by a hiring authority; that Defendant Castellanos be "reframed"—possibly refrained or retrained—to stop his serious misconduct on inmates. (*Id.* at 36, 38.) Plaintiff alleged that Defendant Castellanos

[3] The court construes "reframed" as "restrained" in this context.

averages an attack on an inmate in the ASU (Administrative Segregation Unit) at least once a week. (*Id.* at 38.) Plaintiff requested that Defendant Castellanos be temporarily suspended from his ASU job and relocated while the investigation is pending. (*Id.*) Plaintiff further requested that Defendant Castellanos be arrested for attempted murder and sent back to training for a full sixteen weeks while the investigation is pending. (*Id.*) Finally, Plaintiff requests that, due to the first incident of December 1, 2019, and after the investigation, Defendant Castellanos be fired and relieved from his duties as a CDCR officer. (*Id.*)

The first level review was bypassed and the second level response described the appeal issue as follows: "You claim on April 4, 2020, while housed at Kern Valley State Prison, Short Term Restricted Housing, Correctional Officer Castellanos attacked you without provocation. You allege that while being escorted to the recreational yard; Officer Castellanos grabbed you by the neck and pushed you into the plumbing chase door, striking your head against the wall. You also allege Officer Castellanos punched you in the mouth and slammed you to the ground face first." (ECF No. 54-2 at 39.) The second level response further provided: "All issues unrelated to the allegation of staff misconduct must be appealed separately and will not be addressed in this response. You do not exhaust administrative remedies on any unrelated issue not covered in this response or concerning any staff member not identified by you in this complaint." (*Id.*); UMF 26. On its face, therefore, the court finds that KVSP-O-20-01237 did not place the institution on notice of any retaliation claim against Defendant Castellanos related to the April 4, 2020, incident, at the first or second levels of review.

The parties agree that Plaintiff appealed the second level response and that the OOA received that appeal on June 8, 2020. UMF 33. The court notes, however, that the parties did not provide the court with a copy of KVSP-O-20-01237 that includes the explanation, if any, of Plaintiff's reasons for dissatisfaction with the second level response. (*See* ECF No. 54-2 at 37; ECF No. 54-3 at 32; ECF No 67 at 12–13.) Based on the evidence in the record, the court cannot determine whether Plaintiff attempted to clarify his claims before the third level review to include a retaliation claim against Defendant Castellanos. Plaintiff did not present any argument regarding an attempt to clarify his claims during the grievance process or otherwise contest the

accuracy of Defendant's exhibits in support of the motion for summary judgment. To the extent Plaintiff relies upon his own conclusory statements in his opposition to the motion for summary judgment that he exhausted his administrative remedies as to his claims in this action, (*see* ECF No. 67 at 2), this is insufficient to create a genuine dispute of fact. *See Rivera v. AMTRAK*, 331 F.3d 1074, 1078 (9th Cir. 2003) ("Conclusory allegations unsupported by factual data cannot defeat summary judgment."); *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), as amended (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

At the third level of review, the OOA characterized the issue on appeal as "misconduct (misuse of force) by custody staff at Kern Valley State Prison (KVSP) on April 4, 2020." (ECF No. 54-2 at 35.) There is no indication that the OOA was on notice of any claims related to retaliation by Defendant Castellanos related to the events of April 4, 2020. (*Id.*); *see Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (Under the PLRA, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.) (internal quotation omitted).

Accordingly, based on the record before the court, KVSP-O-20-01237 also does not create a genuine issue as to whether Plaintiff exhausted his administrative remedies as to his retaliation claim against Defendant Castellanos.

IV. <u>CONCLUSION AND RECOMMENDATION</u>

Based on the foregoing, the court finds that Plaintiff failed to exhaust his administrative remedies as to his First Amendment retaliation claim against Defendant Castellanos.

Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Defendant Castellanos' motion for partial summary judgment, (ECF No. 54), be granted;
2. Plaintiff's claim against Defendant Castellanos for retaliation in violation of the First Amendment for the incident on April 4, 2020, be dismissed, without prejudice, for failure to exhaust administrative remedies; and
3. This action proceed only on Plaintiff's second amended complaint against: (1) Defendant Castellanos for excessive force in violation of the Eighth Amendment for both the December 1, 2019, and April 4, 2020, incidents; (2) Defendant Riley for excessive force

in violation of the Eighth Amendment for the December 1, 2019, incident; and

(3) Defendant Riley for retaliation in violation of the First Amendment for the December 1, 2019, incident.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l)(B). Within fourteen (14) days after being served with a copy of these findings and recommendations, a party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Objections, if any, shall not exceed fifteen (15) pages. Any pages filed in excess of the 15-page limit may not be considered. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the district court's judgment.

IT IS SO ORDERED.

Dated: **September 8, 2026**

UNITED STATES MAGISTRATE JUDGE